UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

TIMOTHY A JAGO,

        Petitioner,

        v.                                      Case No. 15-C-0937

MARC CLEMENTS,

        Respondent.

ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL (DOC. 14), GRANTING MOTION TO DISMISS (DOC. 11), AND DISMISSING CASE

Timothy Jago petitions for a writ of habeas corpus regarding his 2010 conviction and forty-year sentence on four counts of first-degree sexual assault with a dangerous weapon and one count of false imprisonment. Jago was convicted in LaCrosse County Circuit Court and sentenced to twenty-two years of initial confinement and eighteen years of extended supervision. (Doc. 1 Ex. 1 at 56 of 99.) He remains confined within this district at the Dodge Correctional Institution.

Jago asserts that he appealed his case to the Wisconsin Court of Appeals and the judgment against him was affirmed; he then unsuccessfully sought review in the Supreme Court of Wisconsin. (Doc. 1 at 3.) Respondent, Marc Clements, concurs. (*See* Doc. 12 at 1–2, Exs. A, B.)

Jago offers eighteen grounds for relief, seventeen of which he admits (and Clements agrees) were not raised in the state courts. The sole ground that was presented to the state courts was that trial counsel failed to file a pretrial motion in limine to exclude other-acts evidence and was thereby ineffective. Sixteen unexhausted grounds for relief concern alleged errors by trial counsel that allegedly resulted in ineffective assistance. The other

unexhausted ground charges that the trial court did not allow trial counsel adequate time to prepare and intimidated Jago such that he could not request new counsel.

After this court screened the petition, Jago asked that counsel be appointed. Shortly thereafter, Clements moved to dismiss the petition for failure to exhaust or, alternatively, for procedural default. Although Clements titled the motion as one to dismiss, he attached various documents to his motion and provided Jago with the text of pertinent portions of Fed. R. Civ. P. 56 and Civil L.R. 7 and 56.

Subsequently, the court denied the request for appointment of counsel without prejudice because Jago failed to establish that he had looked for counsel before filing the motion. The court's order indicated that Jago needed to contact at least five attorneys before filing a new motion. Jago was given several months to find counsel and to respond to the motion to dismiss.

On September 15, 2016, Jago filed another motion for appointment of counsel but did not respond to the merits of the motion to dismiss. Although he titled the motion as a request for extension of time, its contents do not ask for any more time to respond to the motion to dismiss.

Upon that background, a preliminary issue is what should be done with the documents attached to Clements's dismissal motion, which consist of state-court decisions and briefs or petitions filed by the parties in Jago's state-court proceedings. Ordinarily, motions to dismiss are based on the allegations in the complaint or petition. *See* Fed. R. Civ. P. 12(b)(6), (d). If matters outside those pleadings are presented to and not excluded by the court, the motion generally must be treated as one for summary judgment under Fed. R. Civ. P. 56 and the petitioner in this case, Jago, must be notified of the court's

2

intention to use those materials and be given an opportunity to present any material that he believes pertinent. Fed. R. Civ. P. 12(d).

There are exceptions, however. Documents attached to a complaint are part of the pleadings for purposes of a Rule 12(b)(6) motion to dismiss. Fed. R. Civ. P. 10(c); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Most important to the issue at hand is the Wisconsin Court of Appeals appellate decision in Jago's case. Jago submitted that decision with his petition and Clements attached a second copy to the motion to dismiss. Consequently, it will be considered. Further, the court would have considered the appeals-court decision even if Jago had not included it. Documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to a claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Tierney*, 304 F.3d at 738. This rule prevents parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents to the complaint. *188 LLC*, 300 F.3d at 735. Moreover, this district's habeas form requires that relevant state-court decisions be attached (*see* Doc. 1 at 3–4) because they are central to the claims.

Additionally, the court may take judicial notice of facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice "is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Here, the court will take judicial notice of the other documents

3

attached to the motion to dismiss, which are decisions, briefs and petitions from the public state-court files.

Next, the court turns to Jago's motion for appointment of counsel. As Jago proceeds pro se, the court will consider the documents attached to his motion for appointment of counsel.

The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), permits the court to appoint counsel for an indigent petitioner seeking habeas relief under 28 U.S.C. § 2254. To do so, the court must find that the appointment of counsel would serve "the interests of justice" and that the petitioner is "financially eligible." 18 U.S.C. § 3006A(a)(2). "Due process does not require appointment of counsel for indigent prisoners pursuing . . . federal habeas relief." *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007). Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Id.* at 649. Appointment of counsel for habeas petitioners is within the district court's discretion and is governed by standards similar to those followed in civil cases with plaintiffs proceeding in forma pauperis. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983). The decision is a discretionary one. *Pruitt*, 503 F.3d at 653; *Jackson*, 953 F.2d at 1071. And a threshold question is whether the litigant has attempted to obtain counsel himself or has been prevented from doing so. *Pruitt*, 503 F.3d at 654-55; *Jackson*, 953 F.2d at 1072–73.

Once a petitioner has established that his reasonable efforts to obtain counsel were unsuccessful, the court conducts "a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself." *Pruitt*, 503 F.3d at 655. The inquiries are intertwined. "[T]he question is whether the difficulty of the

4

case—factually and legally—exceeds the particular [party's] capacity as a layperson to coherently present it to the judge or jury himself." *Id.* Whether a party appears competent to litigate his own claims, given their difficulty, includes consideration of all parts of litigation, including evidence gathering and responding to motions. *Id.* Regarding the party's ability to litigate the case, the court should review "whatever relevant evidence is available on the question," including pleadings and communications from the party. *Id.*

Jago has provided sufficient evidence of seeking counsel on his own. However, the court is not persuaded that this case exceeds Jago's capacity to coherently present it. Jago's submissions exhibit logic, they are easily understood, and he has shown his ability to focus on pertinent issues. For example, he recognized that he did not exhaust most of his grounds for relief and asked the court for a stay (as discussed below). Moreover, the preliminary issues to be addressed regarding his petition—exhaustion and procedural default—are not complex. Jago points to his need to obtain evidence regarding his wife's medical records and prior bad acts. But at present stage, this case involves the procedural posture of seventeen of Jago's eighteen claims and why he did not raise them in the state courts. Further, regarding the sole exhausted claim, the Wisconsin Court of Appeals decided the claim on the merits such that this court is limited to the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–82 (2011) . Thus, no discovery or hearing is permitted. *Id.* In sum, based upon this review of the *Pruitt* factors as they apply to Jago's claims, the court does not believe the interests of justice or fundamental fairness require appointment of counsel. The motion will be denied.

An application for writ of habeas corpus from a person in state custody shall not be granted unless it appears that (a) the applicant has exhausted state remedies, or (b) there

5

is no available state corrective process, or (c) circumstances exist that render such process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must provide the state courts with a full and fair opportunity to review his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires the petitioner to appeal adverse state-court decisions to the state supreme court when doing so is part of the ordinary appellate review procedure in that state. *Id.* at 847.

A specific claim is not exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181 (1994), the Supreme Court of Wisconsin held that postconviction proceedings under Wis. Stat. § 974.06 cannot be used to review issues that were or could have been litigated on direct appeal, effectively precluding further state review after one round of appellate proceedings.

Generally, a petition for a writ of habeas corpus should be dismissed if state remedies have not been exhausted as to any one of the petitioner's federal claims. *Rose v. Lundy*, 455 U.S. 509 (1982); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 667 (7th Cir. 1990). However, if dismissal would bar a future habeas case because of the statute of limitations, the case may be stayed and held in abeyance to provide the petitioner the opportunity to exhaust the remaining claim. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). A stay is appropriate only when the district court determines there was good cause for the petitioner's failure to exhaust his claim in state court, the unexhausted claim is potentially meritorious, and the petitioner did not engage in intentionally dilatory litigation tactics. *Id.*

In a letter to the court filed after the petition, Jago asked that this case be stayed and held in abeyance under *Rhines* so he could return to state court. (Doc. 2.) However, this court chose not to stay the case and in an order of April, 11, 2016, directed Clements to indicate his position regarding Jago's ability to file a § 974.06 motion. Clements responded by filing the pending motion to dismiss.

First, Clements argues that this case should be dismissed for failure to exhaust. However, he has not convinced the court that Jago is able to pursue a § 974.06 motion. Clements relies on Jago's concession in the petition that he failed to "exhaust" seventeen claims. But Jago's pro se use of the word "exhaust" does not mean that an avenue for state-court review still remains open to him, which is the gist of § 2254(c) exhaustion. Indeed, Clements later states in his motion that

> [t]here are no state court remedies left for Jago to now raise his many new challenges to the effectiveness of his trial attorney or (Ground Eighteen) to the alleged intimidation of him by the trial judge. All of those claims had to be raised on Jago's direct appeal in Wisconsin. They were not, except for the challenge to trial counsel's performance with regard to evidence of Jago's other bad acts (Ground Two).

(Doc. 12 at 6.)

Clements suggests that the "only way Jago could possibly get around" this problem would be to file a petition in the Wisconsin Court of Appeals under *State v. Knight*, 168 Wis. 2d 509 (1992), challenging the effectiveness of his appellate attorney for not raising the additional claims on direct appeal. But Jago does not challenge the effectiveness of his appellate counsel—not even in response to the motion to dismiss. So the possibility of a *Knight* petition does not impact the case here.

This court views the issue as one of procedural default rather than exhaustion. Ineffective assistance of counsel "'is a single ground for relief no matter how many failings

7

the lawyer may have displayed.'" *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (quoting *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)). Courts view counsel's work as a whole, and the overall deficient performance (rather than a specific failing) constitutes the ground for relief. *Id.*

> Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim. Thus, if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.

*Id.* at 934–35; *see Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (stating that "the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to procedural default"). "[O]ne who makes and loses a contention that counsel was ineffective for four reasons cannot start over by choosing four different (or four additional) failings to emphasize." *Peoples*, 403 F.3d at 848.

In Jago's state-court proceedings, postconviction counsel raised ineffective assistance of trial counsel in a *Machner* hearing[1] and on appeal, arguing that trial counsel failed to file a motion in limine to exclude other-acts evidence, opened the door to inadmissible other-acts evidence, failed to object to other-acts evidence that was introduced during the state's rebuttal case, and failed to attack Jago's wife's credibility by asking about her medical condition and medication use. (*See* Doc. 1 Ex. 1 at 79 of 99.) Jago's trial attorney testified at the hearing. (*See id.*)

Additional failings could have been raised at the time but were not, and a letter attached to Jago's petition indicates that appellate counsel considered other issues but

---

[1] See *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), which sets forth the Wisconsin state-court procedure for raising ineffective-assistance-of-trial-counsel claims.

8

determined that they lacked merit. (Doc. 1 Ex. 1 at 54 of 99.) *Escalona-Naranjo* now should bar further ineffective-assistance-of-counsel claims brought under § 974.06. Jago's ineffective-assistance-of-counsel claim was exhausted, although additional factual bases are considered defaulted. Likewise, nothing appears to have prevented Jago from raising the court intimidation and time-to-prepare arguments before the state courts in postconviction and appellate proceedings. *Escalona-Naranjo* should bar that claim as well, meaning the claim was defaulted. As no state-court challenge appears available in light of *Escalona-Naranjo*, this case will not be dismissed or stayed to require Jago to go back to any state court.

This court may examine the merits of a procedurally defaulted claim only if the petitioner (1) demonstrates cause for his procedural error and prejudice as a result, or (2) shows that the failure to consider the claim will result in a fundamental miscarriage of justice. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016). "Cause" means an objective factor, external to the defense, that impeded or precluded the petitioner's ability to pursue the claim in state court. *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015). "Prejudice" means an error that "so infected the entire trial that the resulting conviction violates due process." *Id.*; *see Salberg v. United States*, 969 F.2d 379, 383 (7th Cir. 1992).

Jago had the opportunity following the filing of the motion to dismiss and again during the extended period of time to September 15, 2016, to respond to Clements's arguments regarding cause and prejudice. However, Jago has not presented a sufficient explanation for failing to raise the seventeen claims in the state courts. Pro se status in this court does not excuse his default. *See Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir.

9

2003). Jago was represented by counsel in his state-court trial and postconviction proceedings. He obtained new counsel after trial and before postconviction proceedings such that the arguments he now makes were available at the time of his *Machner* proceedings. And, again, in the petition Jago does not challenge his postconviction and appellate attorney's effectiveness.

The miscarriage-of-justice exception to procedural default requires Jago to convincingly establish actual innocence through new—meaning not presented at trial rather than newly discovered—reliable evidence. *Jones*, 842 F.3d at 461 (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1929 (2013)). Such actual-innocence "gateway" arguments are rarely successful, as the petitioner must persuade the court that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (quoting *McQuiggin*, 133 S. Ct. at 1928). The court must consider all of the evidence, regardless of its admissibility, and "'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Jones*, 842 F.3d at 461 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Procedural actual innocence is not the same as substantive actual innocence, the latter of which means new evidence that convinces the court that the conviction is constitutionally intolerable even if the product of a fair trial. *Id.* at 462. Instead, the petitioner must establish sufficient doubt about guilt to undermine confidence in the conviction without the assurance that the trial was untainted by constitutional error. *Id.*

Jago does not dispute the recitation of facts in the Wisconsin Court of Appeals decision, which indicate that he was convicted of sexually assaulting his wife at gunpoint

a few days after she announced she wanted a divorce. (*See* Doc. 1 Ex. 1 at 72 of 99.) Jago admitted to police that he had been drunk the day of the alleged assault and that when his wife turned down his request for a last "fling" he took out his gun, pointed it at the ceiling and cocked it. He said the purpose was to scare her by putting the gun to his own head. (*See id.*) However, he admitted to police that he knew his wife would take his handling of a gun as a threat. (*See id.*)

At trial, the defense contended that sex was consensual and Jago's wife lied to gain an advantage in the divorce proceedings. (*See id.* at 75 of 99.) Jago testified at trial that his wife consented to sex prior to his handling of the gun. (*See id.* at 76 of 99.) He explained that he intended to pick up the gun "to show her how effective suicide with an empty gun is," but instead, he "kind of froze" and pointed the gun at the ceiling instead. He said he then put the gun down and they had consensual sex. (*See id.*) However, Jago's son found a loaded handgun on Jago's side of the bed the next day. (*See id.* at 72 of 99.)

Jago has not presented evidence that would support a finding in this case that a miscarriage of justice occurred in the trial court. His "new" evidence, even at this late date, is sparse to nonexistent. In Jago's motion for appointment of counsel (Doc. 14) he argues that counsel is needed to investigate his wife's prior bad acts and motive to lie. But Jago's acknowledgment that he handled and cocked a handgun before engaging his wife in sex acts supports a finding that a miscarriage of justice did not occur in his criminal case. He admitted to police that he knew his wife would take the handling of the gun as a threat and that he meant to scare her. Moreover, the evidence discussed below suggests that Jago's wife did not misinterpret the message he meant to send by handling the gun the night that

11

the sex acts occurred. Further, the trial judge found, in denying Jago's postconviction motion respecting his claim of ineffective assistance of counsel, that "[d]uring his testimony, Jago came across as overbearing and difficult for his trial counsel to control. In a case that [came] down solely to whether the jury believed the victim or the Defendant, Jago was not a very sympathetic witness." (Doc. 1 Ex. 1 at 64–65 of 99.) Hence, this court is unpersuaded that a procedural miscarriage of justice occurred—that *no* juror, acting reasonably, would have voted to find him guilty if he provided evidence of his wife's own bad acts and motive to lie.

That leaves one ground for relief to be addressed on the merits: ineffective assistance of trial counsel based on the failure to file a motion in limine regarding other-acts evidence. The Wisconsin Court of Appeals addressed this claim, applying the holding and reasoning of *Strickland v. Washington*, 466 U.S. 668 (1984)*.*

A petition for writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in state court unless the decision on that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" U.S. Supreme Court law or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The relevant state court decision is that of the last state court to review the issue. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009).

A state-court decision is "contrary to" Supreme Court law if it arrived at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on facts that are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A state-court

12

decision is an "unreasonable application" of Supreme Court law if the state court identified the correct governing legal principle but unreasonably applied that principle to the facts of the case. *Id*. at 407-09, 413. A state court's fact determinations are presumed correct and a petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Because the Wisconsin Court of Appeals identified and applied *Strickland*, this case falls under the unreasonable-application prong of § 2254(d)(1). A district court analyzing an unreasonable-application issue "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. This standard is a "substantially higher threshold" than whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see Cullen*, 563 U.S. at 182 (stating that the standard of § 2254(d) is difficult to meet and highly deferential, demanding that state-court decisions receive the benefit of the doubt). As the Supreme Court has stated, if the standard of review in a habeas case

> is difficult to meet, that is because it was meant to be. . . . [A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.

*Harrington v. Richter*, 562 U.S. 86, 102–03 (2011). Moreover, review under the unreasonable-application provision is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 180–82.

The Wisconsin Court of Appeals discussed four potential prior bad acts that came in as evidence during trial: (1) that Jago had previously shot a man who thereafter died; (2) that Jago's wife had found him drunk and handling a gun a few months before the sexual

13

assault; (3) that previously Jago had threatened to kill his wife with two knives but walked off and smashed his son's bass guitar against a pool table; and (4) that the son on another occasion heard his parents yelling and afterward saw that his mother's face was bruised. (Doc. 1 Ex. 1 at 73–79 of 99.)

The Wisconsin Court of Appeals correctly recited the standard of *Strickland*. (*Id.* at 83 of 99.) It then found that counsel was not deficient in failing to file a motion in limine regarding the previous shooting incident because counsel had obtained an agreement from the prosecutor not to introduce the evidence and the prosecutor did not solicit it. (Id. at 84–85 of 99.) Instead, Jago's wife mentioned the prior shooting as part of her answer regarding what Jago told her during a phone call:

> I don't remember him specifically apologizing for anything. At one point in the phone call, um, that I did take in that morning, I said, Tim, you used a gun, and I don't know what to do with that, and he said, I've only pointed a gun at two people in my life and the other one is dead.

(*Id.* at 73.) Moreover, the Wisconsin Court of Appeals found counsel not deficient because the shooting evidence was not other-acts evidence at all. Instead, it was an admissible statement by a party opponent (Jago) and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Thus, a formal motion in limine would have been denied. Finally, after defense counsel's objection following this testimony by Jago's wife, the court struck the statement from the record and instructed the jury not to consider it, lessening any possible prejudice. Regarding the three remaining acts, the Wisconsin Court of Appeals found that they were admissible not to prove Jago's character

14

suggesting actions in conformity therewith but to show Jago's motive in having and handling the gun on the night of the assaults.[2]

This court cannot say that the state appellate court's application of *Strickland* to Jago's argument on appeal was objectively unreasonable. Instead, the appellate court's decision was fully reasoned, supported, and supportable. Though Jago may disagree with the state appellate court's ruling, the decision was not so lacking in justification as to meet the level necessary under § 2254(d)(1). Defense counsel's agreement with the prosecutor made a motion in limine unnecessary, and the statement regarding the prior shooting was one by a party opponent to the witness. And the state-court decisions on admissibility to prove motive were not objectively unreasonable; denial of the ineffective- assistance- of-counsel claim was not objectively unreasonable either. Therefore, Jago's habeas petition must be denied.

Further, the court declines to issue a certificate of appealability. An unsuccessful habeas petitioner has no right to appeal the denial of his petition. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003). Before a habeas petitioner may take an appeal to the Seventh Circuit, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 335-36. A certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes a substantial showing by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to

---

[2]This court notes that they could have been admissible to show absence of mistake or accident as well.

proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The determination requires only a threshold inquiry into the debatability of the district court's decision—"an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 537 U.S. at 327, 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) ("[C]ertificates properly issue in many cases in which the prisoner will fail on full merits review."). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 at 342.

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

When a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. When a district court dismisses a habeas petition based on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

16

whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Section 2253 mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485. The district court is allowed, and indeed encouraged, to proceed first to the procedural issue if its answer is more apparent from the record and arguments. *Id.*

None of the issues raised by petitioner deserves encouragement to proceed further, nor is the denial of each issue debatable among jurists of reason. The court believes that reasonable jurists would not differ or debate regarding the procedural default decision on the seventeen unexhausted claims, which are presented to this court for the first time and for which Jago proffers no basis for finding cause or a miscarriage of justice. Further, the court believes that reasonable jurists would not differ regarding the outcome on the remaining ineffective-assistance-of-counsel ground. The state court applied the standard set forth in *Strickland* correctly and addressed several alleged deficiencies by trial counsel. Its decision rejecting Jago's arguments was reasonable in light of the record, and reasonable jurists would not debate the matter.

Therefore,

IT IS ORDERED that Jago's motion for appointment of counsel (Doc. 14) is denied.

IT IS FURTHER ORDERED that the motion to dismiss (Doc. 11) is granted and this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE